1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,

                            Plaintiff,

        v.

DEBRA WILSON and TERRY L.
CLARKE,

                            Defendants.

CASE NO.  19-5677 RJB

ORDER DEFENDANT DEBRA
WILSON'S MOTION FOR
SUMMARY JUDGMENT

17      THIS MATTER comes before the Court on Defendant Debra Wilson's Motion for

18  Summary Judgment.  Dkt. 37.  The Court has considered the pleadings filed regarding the

19  motions and is fully advised.

20                      **PROCEDURAL HISTORY**

21      This interpleader action was filed on July 24, 2019.  Dkt. 1.  Lincoln National Life

22  Insurance Company's ("Lincoln") motion to interplead the funds at issue was granted on October

23
24

1  17, 2019.  Dkt. 21. Lincoln deposited $167,357.70 in the registry of the court and it was

2  dismissed with prejudice on January 7, 2020.  Dkt. 22.

3      In this motion for summary judgment, Defendant Debra Wilson moves for an order

4  awarding her the proceeds of her late husband's, Anthony C. Wilson's, insurance policy, which

5  has been deposited in the registry of the Court.  Dkt. 37.  For the reasons provided below, her

6  motion (Dkt. 37) should be granted, in part, and denied, in part.

7                          **BACKGROUND FACTS**

8      The following facts are drawn from attachments to the Lincoln's Complaint which are

9  purportedly Lincoln's case file on the decedent, Anthony C. Wilson, and various declarations

10  filed in support and in opposition to the motion for summary judgment.

11      Mr. Wilson acquired the life insurance policy at issue here with Lincoln through his

12  employment with Pierce Transit.  Dkt. 2.  The premiums for the policy were collected from Mr.

13  Wilson's paycheck by Pierce Transit as a payroll deduction and forwarded to Lincoln.  Dkt. 38.

14      The benefits under the policy are payable in accordance with the policy's beneficiary

15  section, which provides that the beneficiary is the person or persons named by the insured at the

16  time of enrollment with the employer and that the beneficiary "may be changed in accord with

17  the terms of the Policy." Dkt. 2, at 13.  The policy further provides that the insured "may change

18  the beneficiary by filing a written notice of the change with [Lincoln] at its Group Insurance

19  Service Office." *Id.,* at 23.  If a beneficiary is not named, the benefits will be paid to the

20  insured's surviving spouse. *Id.*, at 13.

21      Mr. Wilson became disabled and began receiving disability insurance proceeds on July

22  12, 2011. Dkt. 1, at 2.  According to a handwritten notation on Lincoln's records, Defendant

23  Wilson (his wife) was the named sole primary beneficiary on file.  Dkt. 2, at 37.  As a result of

24

1    his disabilities, Mr. Wilson moved to Rainer Rehabilitation, an assisted living facility.  Dkt. 1, at

2    3.

3            On November 9, 2011, Mr. Wilson executed a "Durable Power of Attorney," giving

4    Defendant Wilson "all powers over [his] estate."  Dkt. 2, at 45.  On April 21, 2014, Lincoln

5    received a "Beneficiary Designation Form," naming Defendant Wilson as the primary

6    beneficiary of the life insurance; the signature is unreadable, but the employee signature line,

7    also reads "signed by POA on file."  Dkt. 2, at 39.  On May 24, 2017, Mr. Wilson executed a

8    "Revocation of Durable Power of Attorney" that he gave to Defendant Wilson.  Dkt. 2, at 50.

9            On December 30, 2017, Mr. Wilson executed a "Durable Power of Attorney for

10   Healthcare," giving Defendant Terry J. Clarke (his mother) the "power to make MOST health

11   care decisions for [him] if [he] lose[s] the capability to make informed healthcare decisions for

12   [himself]."  Dkt. 2, at 52 (*emphasis in original*).

13           On September 6, 2018, Lincoln received a "Beneficiary Designation Form," naming

14   Defendant Clarke as the primary beneficiary of the life insurance.  Dkt. 2, at 64.  The form was

15   signed by "Rebekah Betts" an employee at Rainer Rehabilitation.  *Id.*  Ms. Betts also signed a

16   form entitled "Insured's Supplementary Statement."  Dkt. 2, at 62.  Defendant Wilson did not

17   sign either form.  Defendant Wilson states that she "has never given [her] consent to replacing

18   [her] as beneficiary."  Dkt. 38.

19           Mr. Wilson passed away on February 20, 2019.  Dkt. 1, at 3.  In order to process the

20   decedent's insurance benefits, on March 6, 2019, Lincoln contacted Rebekah Betts at Rainer

21   Rehabilitation and asked for the following additional information:

22           Copy of the appropriate power of attorney paperwork giving you or employees of
             Rainier Rehabilitation the legal power to sign paperwork for anything other than
23           Anthony C. Wilson's immediate healthcare and medical treatment . . .

24

ORDER DEFENDANT DEBRA WILSON'S MOTION FOR SUMMARY JUDGMENT - 3

The State of Washington has community property laws; therefore, please provide evidence that includes the spouse's signature with regard to the Revocation of Durable Power of Attorney from 2017, the Beneficiary Designation Form completed September 6, 2018, and Durable Power of Attorney for Health Care.

Dkt. 2, at 55.  In response, on March 12, 2019, Ms. Betts responded: "Terry [Clarke] asked my assistance to complete the paperwork for her.  I nor the facility has any POA.  I have included all the POA and revocation paperwork we have on file."  Dkt. 2, at 58.

In opposition to this motion for summary judgment, Defendant Clarke submitted Ms. Betts' declaration, signed under the penalty of perjury, dated December 31, 2020, in which she states that on September 6, 2018, Mr. Wilson "instructed" her what to write on the Beneficiary Designation Form. Dkt. 40, at 1.  She states that she signed the Beneficiary Designation Form to indicate that she was the person that filled out the form.  *Id.*  Ms. Betts states that, "[a]t no time did I consider myself signing for Mr. Wilson.  My role was to record what Mr. Wilson told me to record on this form."  *Id.*

In her declaration filed in opposition to this motion for summary judgment, Defendant Clarke states that after receiving recertification paperwork from Lincoln, she asked Ms. Betts to help her and Mr. Wilson fill out the papers.  Dkt. 39-1, at 6.  Defendant Clarke contends that Mr. Wilson needed help "due to his poor health and writing."  *Id.*  She contends that Mr. Wilson "provided the answers and Rebecca Betts wrote them down on the insurance documents."  *Id.* Defendant Clarke states that at her son's direction, Ms. Betts changed the beneficiary to the life insurance proceeds from Defendant Wilson to Defendant Clarke.  *Id.*

## PENDING MOTIONS

In her pending motion for an award of the insurance proceeds, Defendant Wilson relies on the Complaint, the attachments to the Complaint which purportedly are Lincoln's case file, and her own declaration.  Dkt. 38.  Defendant Wilson argues that she is entitled to the insurance

1  proceeds because they are community property.  Dkt. 37. She also asserts that the September 6,

2  2018, "Beneficiary Designation Form," (which was signed by Rebekah Betts) is invalid because

3  Ms. Betts did not have the authority to change beneficiaries and because Defendant Wilson did

4  not sign the form as is required in Washington, a community property state.  *Id.*  Defendant

5  Wilson argues that she is entitled to be paid the full amount of the proceeds.  *Id.*

6      Defendant Clarke opposes the motion.  Dkt. 39.  Defendant Clarke contends that the

7  insurance premiums were taken from Mr. Wilson's separate property and so the proceeds are

8  separate property.  *Id.*  She argues that even if the proceeds were paid from their community

9  property, Defendant Wilson would only be entitled to one half the insurance proceeds, not all of

10  them.  *Id.*  Defendant Clarke argues that the September 6, 2018 Change of Beneficiary Form was

11  valid.  *Id.*

12      In her reply, Defendant Wilson argues that the policy proceeds are community property

13  and that the September 6, 2018 Change of Beneficiary Form is invalid.  Dkt. 41.  Defendant

14  Wilson asserts that she is entitled to the full amount of proceeds.  *Id.*

15  <u>**DISCUSSION**</u>

16  **A.  STANDARD ON MOTION FOR SUMMARY JUDGMENT**

17      Summary judgment is proper only if the pleadings, the discovery and disclosure materials

18  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

19  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (a). The moving party is

20  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

21  showing on an essential element of a claim in the case on which the nonmoving party has the

22  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

23  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

24

for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## B.  WASHINGTON SUBSTANTIVE LAW APPLIES

Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity jurisdiction, as here, apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). In applying Washington law, the Court must apply the law as it believes the Washington Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

1

**C.  DEFENDANT WILSON'S MOTION FOR AWARD OF PROCEEDS**

2      Defendant Wilson asserts that she is entitled to the proceeds because the proceeds are

3  community property and that the September 6, 2018 Change in Beneficiary Form is invalid.

4          1.  Community Property

5      "Property acquired during marriage is presumptively community property.  A party may

6  rebut this presumption by offering clear and convincing evidence that the property was acquired

7  with separate funds." *Schwarz v. Schwarz*, 192 Wn. App. 180, 189 (2016).  In Washington,

8  absent an agreement between spouses to the contrary, "wages earned during a marriage are

9  community property." *In re Marriage of Mueller,* (2007); *In re Marriage of DeHollander*, 53

10  Wn. App. 695, 701 (1989) ("all of the earnings of a spouse during marriage are community

11  property.") When insurance premiums, like those here, "are paid by an employer to a married

12  employee, the premiums constitute community earnings." *Porter v. Porter*, 107 Wn.2d 43, 50

13  (1986).  "When insurance premiums are paid for with community funds, the proceeds are

14  community property." *Id.*, at 49.

15      The proceeds of the insurance policy at issue here are community property.  The policy

16  premiums were paid by Mr. Wilson's wages; they were deducted from his pay by his employer

17  and sent to Lincoln while he was married to Defendant Wilson.  Defendant Clarke asserts that

18  the character of the money used to pay the premiums was separate property because it was

19  deducted before his employer deposited the remaining funds in Mr. Wilson's bank account.

20  Defendant Clarke points to no authority supporting her supposition that money deducted by an

21  employer is separate property.  Indeed, Washington law is to the contrary.  *Porter,* at 50.  While

22  Defendant Clarke argues that more discovery is needed on the issue, she provides absolutely no

23  rationale for her supposition.  The record contains Mr. Wilson's pay records and his employer's

24

1   policy on how the premiums were paid.  Defendant Wilson has explained how she and her

2   husband of over 30 years conducted their financial affairs.  Defendant Clarke fails to point

3   anything she hopes to discover.  Defendant Clarke has failed to point to "clear and convincing

4   evidence" that the insurance proceeds were "acquired with separate funds."  *Schwarz,* at 189.

5        Defendant Wilson has shown that there are no issues of fact and she is entitled to a

6   judgment as a matter of law that the insurance proceeds are community property.  As community

7   property, 50% of the insurance proceeds belong to Defendant Wilson outright.  *Porter,* at 464

8   (holding that where an insurance policy is community property "and the surviving spouse is not

9   named beneficiary, the community interest to which such surviving spouse is entitled amounts to

10  one-half the proceeds of the policy").  To the extent that Defendant Wilson moves for disbursal

11  of her community property (50% of the insurance proceeds), her motion (Dkt. 37) should be

12  granted.

13       Pursuant to Western Dist. Washington Local Rule of Civ. P. 67(b),

14       All motions for disbursement of registry funds shall specify the principal sum
         initially deposited, the amount(s) of principal funds to be disbursed and to whom

15       the disbursement is to be made. Each proposed order shall contain the following
         language: "... the clerk is authorized and directed to draw a check(s) on the funds

16       deposited in the registry of this court in the principal amount of $____ plus all
         accrued interest, minus any statutory users fees, payable to (name of payee) and

17       mail or deliver the check(s) to (name of payee)." If more than one check is to be
         issued pursuant to a single order, the portion of principal and interest due each

18       payee must be separately stated.

19       The court requires the mailing address(es), Social Security number(s) or Tax
         ID(s) of the disbursement recipients be provided to the Clerk and shall not be filed

20       in the record.

21

22       In accordance with this order and Local Rule 67(b), the Clerk should be authorized and

23  directed to draw a check on the funds deposited in the registry of this court for one-half the

24  principal amount, plus one-half all accrued interest, minus one-half any statutory users fees,

ORDER DEFENDANT DEBRA WILSON'S MOTION FOR SUMMARY JUDGMENT - 8

payable to Debra Wilson and to mail or deliver the check to Debra Wilson.  Defendant Wilson's

counsel should contact the Clerk of the Court to provide the remaining information required by

the rule.

### 2. Validity of Change of Beneficiary Form

"In general, the beneficiary named in the policy will be entitled to the proceeds to the

extent that the present spouse's community property rights are not invaded." *Aetna Life Ins. Co.*

*v. Wadsworth*, 102 Wn.2d 652, 662, 689 P.2d 46, 52 (1984).  Defendant Wilson is entitled to

50% of the insurance proceeds as her share of this community property; this opinion will now to

turn to the issue of whether the September 6, 2018 Change in Beneficiary Form was valid.

"Washington permits courts, acting in equity, to enforce attempted changes in

beneficiaries" on insurance policies.  *In re Estate of Freeberg,* 130 Wn. App. 202, 205 (2005).

The issue here is whether the September 6, 2018 Change in Beneficiary Form was an "attempted

change" under Washington law.

> The general rule in this jurisdiction and elsewhere as to attempted changes of
> beneficiaries on an insurance policy is that courts of equity will give effect to the
> intention of the insured when the insured has substantially complied with the
> provisions of the policy regarding that change.

*Id.*  "Substantial compliance requires that the insured has manifested an intent to change

beneficiaries and done everything reasonably possible to make that change." *Id.*

In order to change beneficiaries, the policy at issue here requires that the insured "may

change the beneficiary by filing a written notice of the change with [Lincoln] at its Group

Insurance Service Office."  Dkt. 2, at 23.

Defendant Clarke's motion for summary judgment that the September 6, 2018 Change in

Beneficiary Form was invalid should be denied.  There are issues of fact as to whether the

September 6, 2018 Change in Beneficiary Form was an "attempted change" by Mr. Wilson.

Although the form was in writing and sent to Lincoln, it was not signed by Mr. Wilson.  The

individual who did sign the form, Ms. Betts, acknowledged that she did not have a power of

attorney to act on his behalf.  Her correspondence with Lincoln indicates that she acted at

Defendant Clarke's direction, not Mr. Wilson's direction.  Although Ms. Betts states now states

that she recorded Mr. Wilson's wishes, she has provided two potentially contradictory

statements.  Defendant Clarke's own declaration merely repeats her prior assertions.  There are

issues of fact as to whether Mr. Wilson "manifested an intent to change beneficiaries" and did

"everything reasonably possible to make that change."

### D.  OTHER MATTERS

There is nothing in the record to indicate that the parties have participated in any

meaningful pretrial settlement efforts.  This is a simple case and should have been resolved long

ago.  It is set to begin trial on April 5, 2021.  The parties should carefully consider whether it

makes economic sense to take this case to trial (particularly with the attorneys' fees that are

undoubtedly stacking up) or to explore a settlement.

Under Western District of Washington Local Rule 39.1(c)(1), the Court "may order the

parties to engage in mediation."  The undersigned finds that the parties in this case would likely

benefit from engaging in mediation.  They should be ordered notify the Court whether they agree

that the case would benefit by mediation as provided in Local Rule 39.1 by **January 15, 2021**.

Pursuant to Local Rule 39.1(e), the Court "may appoint a settlement judge who may conduct a

settlement conference in such manner as that settlement judge may deem appropriate."  On or before

**January 15, 2021**, the parties should also notify the Court if they would like a U.S. Magistrate Judge

appointed to conduct a settlement conference.  The parties should be aware that all other case

deadlines remain.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**ORDER**

It is **ORDERED** that:

- Defendant Debra Wilson's Motion for Summary Judgment (Dkt. 37) **IS:**

  **GRANTED, in part, and DENIED, in part.**

  o The Clerk is authorized and directed to draw a check on the funds

    deposited in the registry of this court for one-half the principal amount,

    plus one-half all accrued interest, minus one-half any statutory users fees,

    payable to Debra Wilson and to mail or deliver the check to Debra

    Wilson;

- By **January 15, 2021**, the parties **SHALL NOTIFY** the Court whether the case

  should be ordered to mediation or to a settlement conference and whether they

  would like appointment of a U.S. Magistrate Judge to conduct a settlement

  conference.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 12th day of January, 2021.

_____
ROBERT J. BRYAN
United States District Judge

ORDER DEFENDANT DEBRA WILSON'S MOTION FOR SUMMARY JUDGMENT - 11